**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

MICHAEL SEGURA,

Plaintiff,

v. Civ. No. 11-0926 MV/WDS

PAUL COLOMBE, individually and in his official capacity, THE BOARD OF COUNTY COMMISSIONERS of SANTA FE COUNTY, and, GREG SOLANO, individually and in his capacity as SANTA FE COUNTY SHERIFF,

Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendants Board of County Commissioners of Santa Fe County and Greg Solano's ("County Defendants") Motion for Summary Judgment (Qualified Immunity) [Doc. 18]. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the County Defendants' Motion is well taken in part and will be GRANTED in part.

**BACKGROUND**

The facts supported by the evidence, viewed in the light most favorable to Plaintiff Michael Segura ("Plaintiff") as the party opposing the summary judgment, are as follows. *See Cavanaugh v. Woods Cross City*, 625 F.3d 661, 662 (10th Cir. 2010). At approximately 11:00 p.m. on July 10, 2009, Defendant Paul Colombe ("Defendant Colombe"), dressed in his full Pueblo of Tesuque Tribal Police Department uniform, driving a fully-marked Tesuque Pueblo Tribal Police vehicle, and displaying a tribal badge of office, conducted a traffic stop of an automobile driving within Tesuque Pueblo based upon the driver's failure to come to a complete

stop at a stop sign. Defendant Colombe was assisted by Tribal Police Officer Waylon Brown, who also was dressed in his full tribal police uniform and likewise was displaying his tribal badge of office. Defendant Colombe made several arrests arising out of the traffic stop, including an arrest of Plaintiff, a non-Native American, back-seat passenger of the stopped vehicle, for Parties to a Crime, N.M. Stat. Ann. § 66-8-120, and Concealing Identity, N.M. Stat. Ann. § 30-22-3, both of which are crimes pursuant to New Mexico (and not Tesuque tribal) law. Plaintiff was booked at the Santa Fe County Adult Detention Facility. Thereafter, Defendant Colombe filed a criminal complaint against Plaintiff in the Santa Fe County Magistrate Court on July 11, 2009, for both offenses. Plaintiff subsequently was prosecuted in the State of New Mexico First Judicial District Court for the crime of Concealing Identity.

On August 13, 2008, Defendant Colombe was duly appointed and commissioned as a Deputy Sheriff in the County of Santa Fe. As a commissioned Santa Fe County Deputy Sheriff, Defendant Colombe was sworn to support the Constitution of the United States, the Constitution and laws of the State of New Mexico, and the laws of the County of Santa Fe, and to faithfully and impartially discharge the duties of the Santa Fe County Sheriff's Department to the best of his ability. Defendant Colombe's appointment and commission as a Santa Fe County Deputy Sheriff was in effect at the time he arrested Plaintiff.

From January 2004 through April 2010, Defendant Colombe was employed as a full-time police officer by the Pueblo of Tesuque Tribal Police Department. During this same time, Defendant Colombe's salary and employment benefits were paid by the Pueblo of Tesuque Tribal Police Department and no part of his salary or benefits was paid by the Santa Fe County Sheriff's Department or the County of Santa Fe. Also during this time, (1) the Santa Fe County Sheriff's Department had no right to promote, demote, discipline and/or fire Defendant

Colombe, (2) Defendant Colombe was not subject to the Sheriff's Department's rules, regulations, policies, or procedures, (3) the Santa Fe County Sheriff's Department did not supervise or oversee Defendant Colombe, assign work to him, or control the manner or means of his performance as a law enforcement officer, and (4) the Santa Fe County Sheriff's Department did not provide, pay for, or facilitate any training of Defendant Colombe. The Santa Fe County Sheriff's Department, however, did possess the right to revoke at any time Plaintiff's appointment and commission as a Santa Fe County Deputy Sheriff.

**STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted). The moving party need not negate the nonmovant's claim, but rather must only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive

matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted). The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *Pueblo v. Neighborhood Health Ctrs., Inc.*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson,* 477 U.S. at 248.

Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g., Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

## DISCUSSION

### I. Plaintiff's Claims Under 42 U.S.C. Section 1983

The County Defendants move for summary judgment on the basis of qualified immunity with respect to Plaintiff's claims pursuant to 42 U.S.C. Section 1983. When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established. *See Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012) (internal quotations and citation

omitted). In his response to the County Defendants' Motion for Summary Judgment on the Section 1983 claims, Plaintiff concedes that he cannot establish that the County Defendants violated a clearly established constitutional right, and he therefore withdraws his Section 1983 claims against the County Defendants. Based on Plaintiff's withdrawal, the County Defendants' Motion for Summary Judgment on the Section 1983 claims is denied as moot.

II. Plaintiff's Claims Under the New Mexico Tort Claims Act

The County Defendants also move for summary judgment on Plaintiff's respondeat superior claims under the New Mexico Tort Claims Act ("NMTCA" or "Act"). The NMTCA prohibits a plaintiff from suing a governmental entity of New Mexico or its employees or agents unless the plaintiff's cause of action fits within one of the exceptions granted for governmental entities and public employees. *See* N.M. Stat. Ann. §§ 41-4-4. Plaintiff is seeking to impose NMTCA supervisory liability on the County Defendants under a theory of respondeat superior to require the County Defendants to answer for the alleged torts of Defendant Colombe, a Tesuque tribal police officer who was appointed and commissioned as a Deputy Sheriff by the Santa Fe County Sheriff's Department. In *Silva v. State*, the New Mexico Supreme Court confirmed that the doctrine of respondeat superior extends NMTCA liability to public entities that have supervisory control over tortious actors. *See* 745 P.2d 380, 385 (N.M. 1987), *limited on other grounds by Archibeque v. Moya*, 866 P.2d 344 (N.M. 1993). The *Silva* court explained that to prevail on a respondeat superior claim against a particular supervisory entity, a plaintiff must establish (1) a negligent "public employee," (2) who meets one of the NMTCA's waiver exceptions under Sections 41-4-5 to 41-4-12 of the Act, and (3) a defendant "governmental entity" that has immediate supervisory responsibilities over the employee. *See id.*; *see also Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 916 P.2d 1313, 1318 (N.M. 1996).

The parties do not dispute that the County Defendants constitute "governmental entities" within the meaning of the NMTCA,[1] and that the County Defendants could be subject to respondeat superior liability based upon the alleged torts of their public employees. The parties likewise do not dispute that the Tesuque Tribal Police Department is not a governmental entity within the meaning of the Act. *See* N.M. Stat. Ann. §§ 41-4-3(B), (C) & (H). What the parties do dispute, however, is whether Defendant Colombe meets the first *Silva* requirement of being a "public employee" of the County Defendants within the meaning of the NMTCA, whether Defendant Colombe meets the second *Silva* requirement of falling under one of the NMTCA's waiver exceptions in Sections 41-4-5 to 41-4-12 of the NMTCA, and whether the County Defendants meet the third *Silva* requirement of having immediate supervisory responsibilities over Defendant Colombe. The Court will address each of these questions in turn.

A. <u>"Public Employee" Within the Meaning of the NMTCA</u>

With respect to the first *Silva* requirement, the County Defendants argue that Plaintiff's NMTCA claims against them must fail because Defendant Colombe was not a "public employee" within the meaning of the NMTCA and that his acts therefore could not be attributable to the County Defendants. *See Silva*, 745 P.2d at 385. The NMTCA defines "public employee" as an "officer, employee or servant of a governmental entity . . . including[, among other things,] law enforcement officers[ and] persons acting on behalf or in service of a

---

[1] The NMTCA defines "governmental entity" as "the state or any local public body," including "all political subdivisions of the state and their agencies, instrumentalities and institutions" and the "state of New Mexico or any of its branches, agencies, departments, boards, instrumentalities or institutions." N.M. Stat. Ann. §§ 41-4-3(B), (C), & (H).

governmental entity in any official capacity, whether with or without compensation." N.M. Stat. Ann. §§ 41-4-3(F)(2) & (3).

The Act defines "law enforcement officer" as "a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principle duties under law are to hold in custody any person accused of a criminal offense, [or] to maintain public order or to make arrests for crimes." *Id.* § 41-4-3(D). There is no dispute that Defendant Colombe's regular duties meet the Act's definition of "law enforcement officer." The problem arises, however, with respect to two of the other criteria in the definition. Specifically, the Act requires Defendant Colombe to be a *salaried* public employee of a *governmental entity*. *Id.* (emphasis added). This is problematic for Plaintiff on the one hand because, although the undisputed facts indicate that Defendant Colombe was a "salaried" employee in that he was employed full-time as a police officer by the Pueblo of Tesuque Tribal Police Department, the Tribal Police Department does not meet the second criteria of being a "governmental entity" within the meaning of the NMTCA. *See id.* §§ 41-4-3(B), (C) & (H). It is likewise problematic on the other hand because, while the County Defendants meet the second criteria of being a "governmental entity," the undisputed facts show that the County Defendants paid no part of Defendant Colombe's salary or benefits rendering it impossible for Defendant Colombe to meet the first criteria of being a "salaried public employee" of the Santa Fe County Sheriff's Department. Accordingly, on the facts construed in the light most favorable to Plaintiff, Plaintiff cannot establish that Defendant Colombe was a "law enforcement officer" within the meaning of the Act.

Plaintiff's argument that Defendant Colombe was a "public employee" by virtue of his appointment and commission as a Santa Fe County Deputy Sheriff, even if he was not a "law

enforcement officer" within the meaning of the NMTCA, likewise fails to satisfy the first *Silva* requirement. Admittedly, the Act does not limit the definition of "public employee" to include only law enforcement officers. "Public employee" also includes an "officer, employee or servant . . . acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation," provided such person is not an independent contractor. *Id.* § 41-4-3(F)(3); *see also Celaya v. Hall*, 85 P.3d 239, 242 (N.M. 2004) (affirming district court's decision on summary judgment that a chaplain who volunteered for the Bernalillo County Sheriff's Department, and who also held a full-time, compensated position with an entity unrelated to the Sheriff's Department, was a "public employee" within the meaning of New Mexico Statutes Annotated Section 41-4-3(F)(3)). The question becomes, then, whether Defendant Colombe was a public employee of the County Defendants by virtue of his commission as a Santa Fe County Deputy Sheriff, and if so, whether Defendant Colombe was an independent contractor excluded from Act's definition of public employee.

With respect to the first inquiry, Plaintiff correctly argues that absent the commission from the Santa Fe County Sheriff's Department, Defendant Colombe lacked the jurisdiction to charge and prosecute a non-Indian such as Plaintiff for state criminal violations occurring on Indian land. *See, e.g., United States v. Green*, No. 04-5166, 2005 WL 1799823, at *2 (10th Cir. 2005) (citing *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 195 (1978)). Moreover, the undisputed facts show that Defendant Colombe did in fact arrest Plaintiff for Parties to a Crime, and Concealing Identity, both of which are crimes pursuant to New Mexico (and not Tesuque tribal) law, *see* N.M. Stat. Ann. §§ 66-8-120, 30-22-3, and that he thereafter filed a criminal complaint prosecuting Plaintiff in the Santa Fe County Magistrate Court for both offenses. Defendant Colombe had no authority to undertake these actions as a Tesuque tribal police

officer. The Court therefore concludes that Defendant Colombe was acting in his capacity as a Deputy Sheriff for the County of Santa Fe.[2]

Plaintiff's claim must nonetheless fail, however, because, with respect to the second inquiry, *see id.* § 41-4-3(F)(3), the facts viewed in Plaintiff's favor suggest that Defendant Colombe was acting as an independent contractor and therefore is excluded from the Act's definition of "public employee." The New Mexico Supreme Court in *Celaya v. Hall*, looking to well-established agency principles, has explained that the principal's right to control the individual performing the work often distinguishes an employee from an independent contractor. *See* 85 P.3d at 142. The Plaintiff, however, has presented no evidence that the County Defendants had the right to control Defendant Colombe other than the fact that the County could revoke his commission as a Deputy Sheriff at any time. Rather, the undisputed evidence shows that the County Defendants had no right to supervise, oversee, promote, demote, discipline, or fire Defendant Colombe, that Defendant Colombe was not subject to the Sheriff's Department's rules, regulations, policies, or procedures, that the Santa Fe County Sheriff's Department did not assign work to Defendant Colombe or control the manner or means of his performance as a law enforcement officer, and that the Santa Fe County Sheriff's Department did not provide, pay for,

---

[2] The New Mexico Court of Appeals' decision in *Williams v. Board of County Comm'rs of San Juan County*, 963 P.2d 522, 528 (N.M. Ct. App.), *cert. denied*, 964 P.2d 818 (1998), does not change this result. In *Williams*, the court determined that a tribal police officer's cross-deputization as a county deputy sheriff *alone* did not transform the tribal police officer into a "public employee" within the meaning of the NMTCA. *See id.* The *Williams* decision is distinguishable, however, because the tribal police officer was not charging and prosecuting a non-Indian with a state crime, but rather was citing a non-Indian for violating tribal law. *See id.* at 524. Here, in contrast, it is not the commission by the Santa Fe County Sheriff's Department alone that renders Defendant Colombe a public employee, but rather the fact that Defendant Colombe was acting pursuant to his authority as a Santa Fe County Deputy Sheriff when he charged and prosecuted Plaintiff for violation of the laws of the State of New Mexico.

or facilitate any training of Defendant Colombe. This evidence, even when viewed in the light most favorable to Plaintiff, is insufficient to raise a factual question as to whether the County Defendants had the right to control Defendant Colombe.

The inquiry, however, does not end with a cursory application of the right-to-control test. The court in *Celaya* cautioned against strict application of this test, and instead instructed courts to take a more nuanced approach that considers a number of factors in determining whether an individual sufficiently is subject to a principal's control or right to control to render that individual an employee rather than an independent contractor. *See id.* at 243. These factors include (1) the type of occupation and whether it is usually performed without supervision; (2) the skill required for the occupation; (3) whether the employer supplies the instrumentalities or tools for the person doing the work; (4) the length of time the person is employed; (5) the method of payment, whether by time or job; (6) whether the work is part of the regular business of the employer; (7) whether the parties intended to create an employment relationship; and (8) whether the principal is engaged in business. *See id.* (citing Restatement (Second) of Agency §§ 220(2)(a) – (j) (1958)). "'[N]o particular factor should receive greater weight than any other, except when the facts so indicate, nor should the existence or absence of a particular factor be decisive. Rather, the totality of the circumstances should be considered in determining whether the employer has the right to exercise essential control over the work or workers of a particular contractor.'" *Id.* (quoting *Harger v. Structural Servs., Inc.*, 916 P.2d 1324, 1334 (N.M. 1996)). The Court will analyze each factor in turn.

The first factor—the type of occupation and whether it is usually performed without supervision—weighs in favor of finding that the County Defendants did not have control of or the right to control Defendant Colombe and that Defendant Colombe therefore was an

independent contractor. The work of a law enforcement officer is typically performed with supervision and training, and yet the undisputed facts here show that the County Defendants had no right to supervise, discipline, train, assign work to, or control the manner or means of work of Defendant Colombe and that Defendant Colombe was not subject to the Sheriff's Department's rules, regulations, policies, or procedures. *See supra* pp. 9-10. The only power the County Defendants had over Defendant Colombe was the power to appoint and commission Defendant Colombe as a Deputy Sheriff and the power to revoke the appointment and commission. This degree of supervision is not commensurate with the nature of the position of a law enforcement officer and therefore does not weigh in favor of a finding that Defendant Colombe was an employee of the County Defendants. *Compare Celaya*, 85 P.3d at 243 (finding volunteer chaplain was a Sheriff's Department employee because the degree of supervision exercised over the chaplain was proportionate to the professional nature of the chaplain's position).

Another factor to consider is whether the principal supplies the instrumentalities or tools for the individual doing the work. Here, it is undisputed that at the time of Plaintiff's arrest Defendant Colombe was wearing a full Pueblo of Tesuque Tribal Police Department uniform, driving a fully-marked Tesuque Pueblo Tribal police vehicle, and displaying a tribal badge of office. There is no evidence in the record that the County Defendants supplied Defendant Colombe with any of the instrumentalities or tools of being a law enforcement officer other than the certificate appointing and commissioning Defendant Colombe as a Santa Fe County Deputy Sheriff. This factor, therefore, weighs in favor of finding that the County Defendants did not have sufficient control over, or a right to control Defendant Colombe, to transform him into an employee of the Sheriff's Department.

Also relevant is whether the parties intended to create an employment relationship. The

undisputed evidence reveals that the Santa Fe County Sheriff's Department paid no part of Defendant Colombe's salary or benefits and that Defendant Colombe was employed full-time by the Pueblo of Tesuque Tribal Police Department. Moreover, as previously discussed, the Santa Fe County Sheriff's Department had no right to supervise, discipline, promote, or train Defendant Colombe. *See supra* pp. 9-10. Accordingly, this factor weighs in favor of finding that Defendant Colombe was an independent contractor of the County Defendants.

Another relevant factor is the length of time the person is employed, with employment over a considerable period of time with regular hours and over a fixed route being indicative of a master-servant, as opposed to a principal-independent contractor, relationship. *See* Restatement (Second) of Agency § 220(2), cmt. h (1958). Here, Defendant Colombe was commissioned as a Santa Fe County Deputy Sheriff on August 13, 2008, and remained commissioned as a Deputy Sheriff through the time of Plaintiff's arrest, approximately eleven months later on July 10, 2009. While eleven months constitutes a significant period of time, there is no evidence in the record that Defendant Colombe had any regular hours or fixed route in his capacity as a commissioned Santa Fe County Deputy Sheriff. Indeed, the only evidence in the record indicates that the Santa Fe County Sheriff's Department had no right to supervise or oversee Defendant Colombe, which includes no right to set or oversee his hours worked or his route patrolled. Defendant Colombe likewise was not subject to the county's rules, regulations, policies, or procedures. *See id.* Accordingly, this factor, on balance, weighs in favor of a finding that the County Defendants had no right to control Defendant Colombe, thereby rendering Defendant Colombe an independent contractor rather than an employee.

The method of payment is also a relevant factor, with payment by time (*e.g.*, by hour or month) weighing in favor of a master-servant relationship and payment by job weighing in favor

of a principal-independent contractor relationship. *See id.* Here, the undisputed evidence shows that no part of Defendant Colombe's salary or benefits was paid by the Santa Fe County Sheriff's Department, and that Defendant Colombe's entire salary was paid by the Pueblo of Tesuque Tribal Police Department. This factor therefore also weighs in favor of a finding that Defendant Colombe was an independent contractor of the County Defendants.

The skill required for the occupation is another factor to consider, with work that does not require the services of one highly educated or skilled being more indicative of a master-servant relationship. Because the work of a law enforcement officer is skilled work that requires training, this factor weighs in favor of a finding that Defendant Colombe was an independent contractor of the Santa Fe County Sheriff's Department.

Although the final two factors weigh in favor of a master-servant relationship—*i.e.*, Defendant Colombe's work was part of the regular business of the Santa Fe County Sheriff's Department and the Sheriff's Department is engaged in the business of law enforcement—the Court nonetheless concludes, applying the factors articulated by the *Celaya* court under the totality of the circumstances, that at the time of Plaintiff's arrest and prosecution Defendant Colombe was acting as an independent contractor of the Santa Fe County Sheriff's Department. Considered in context, and based on the evidence viewed in the light most favorable to Plaintiff, the Santa Fe County Sheriff's Department did not exercise sufficient control over Defendant Colombe's activities to render the relationship one of an employer and an employee. Rather, the evidence indicates that Defendant Colombe was acting as an independent contractor at the time of Plaintiff's arrest and prosecution. Because an independent contractor is excluded from the definition of "public employee," Plaintiff has failed to satisfy the first *Silva* requirement by showing that Defendant Colombe was a negligent public employee within the meaning of the

Act. The County Defendants therefore are entitled to summary judgment in their favor.

B. NMTCA's Waiver Exceptions

The County Defendants are also entitled to summary judgment in their favor on a second, independent ground. Specifically, *Silva* requires a plaintiff to not only identify a negligent public employee but also to establish that the public employee meets one of the NMTCA's waiver exceptions under Sections 41-4-5 to 41-4-12. *See Silva v. State*, 745 P.2d 380, 385 (N.M. 1987). Plaintiff has failed to establish facts showing that Defendant Colombe falls within such an exception. The applicable NMTCA exception provides that the immunity granted does not apply to liability for certain enumerated claims, including the claims of battery, false imprisonment, false arrest, malicious prosecution, and abuse of process "when caused by *law enforcement officers* while acting within the scope of their duties." N.M. Stat. Ann. § 41-4-12 (emphasis added). This Court already has concluded, on the facts viewed in the light most favorable to Plaintiff, that Defendant Colombe does not meet the definition of "law enforcement officer" set forth in the Act. *See supra* p. 7. The waiver of immunity for law enforcement officers, therefore, does not apply. Accordingly, the County Defendants are entitled to summary judgment in their favor on this ground as well.

C. Governmental Entity with Immediate Supervisory Responsibilities

Even assuming, arguendo, that Plaintiff had raised a factual dispute with respect to the first two *Silva* requirements, the County Defendants nonetheless would be entitled to summary judgment in their favor because Plaintiff has failed to point to facts showing that the County Defendants had immediate supervisory responsibilities over Defendant Colombe, which is the third requirement of *Silva*. *See* 745 P.2d at 385. The Court already has concluded that the County Defendants did not have the control of or the right to control Defendant Colombe

necessary to render Defendant Colombe an employee rather than an independent contractor. *See supra* pp. 9-10. The Court likewise concludes that Plaintiff has failed to raise a factual dispute with respect to whether the County Defendants had immediate supervisory responsibilities over Defendant Colombe. In *Silva*, the New Mexico Supreme Court explained that a trial court should employ traditional concepts of respondeat superior for determining whether a governmental entity had immediate supervisory responsibilities over its public employee. *See* 745 P.2d at 385. The inquiry again rests on agency principles. Specifically, a court must determine whether the governmental entity had the legal right to supervise or control the public employee, regardless of whether the entity actually exercised that control, *see id.*, or, even absent a right to control, whether the entity enjoyed a degree of actual, *de facto* control over the employee, *see California First Bank v. State*, 801 P.2d 646, 651-52 (N.M. 1990). The exercise or right to control need not be under a contract for employment. Indeed, a "master-servant relationship . . . may exist when one person volunteers to perform services for another." *Id.*; *cf. Celaya v. Hall*, 85 P.3d at 244.

As previously discussed, the only control the County Defendants had over Defendant Colombe was the power to appoint or terminate his commission as a Santa Fe County Deputy Sheriff. This minimal control, when considered in light of the overwhelming evidence produced by the County Defendants that they had no right to control Defendant Colombe, *see supra* p. 9-10, is insufficient as a matter of law to constitute a genuine factual dispute as to whether the County Defendants had control or *de facto* control over Defendant Colombe. *See Silva*, 745 P.2d at 385. Accordingly, the Court concludes that the County Defendants did not

have immediate supervisory responsibilities over Defendant Colombe and grants the County Defendants' Motion for Summary Judgment on this ground as well.[3]

Plaintiff's policy argument does not persuade the Court otherwise. In his Response to the County Defendants' Motion for Summary Judgment, Plaintiff opines, "While it is true that the [NMTCA definition of "law enforcement officer"] appears to give [the County] Defendants a pass when they employ a deputy who is paid by a tribe, it is certainly against the intent of the law. If tribal immunity protects the officer or tribe from responsibility and the Tort Claims Act protects the county from responsibility, this creates a category of a fairly large number of police officers in New Mexico who can disregard the rights of citizens with impunity." Plaintiff's argument misses the mark. Contrary to Plaintiff's belief, the intent of the NMTCA is not to hold all governmental actors liable for their torts or the torts of their employees. Rather, the New Mexico legislature enacted the NMTCA in attempt to reach a balance between two competing goals. *See Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1222, 1252 (D.N.M. 2010). On the one hand, and in Plaintiff's favor, the legislature recognized the "inherent unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity," *id.* at 1251, and wanted to compensate those injured by the negligence of public employees and to impose duties of reasonable care. *See id.*; N.M. Stat. Ann. § 41-4-2(A). On the other hand,

---

[3] If the court determines that a governmental entity had the right to control or had *de facto* control over the public employee, the court next should apply the remoteness doctrine to determine if the entity should be freed from liability. *See Silva,* 745 P.2d at 385. Because the Court finds that Plaintiff has failed to point to evidence showing that the County Defendants had any right to control or any *de facto* control over Defendant Colombe, and the Court grants summary judgment in the County Defendants' favor on this ground, the Court need not—and therefore does not—reach the second part of the inquiry whether the remoteness doctrine should free the Board of County Commissioners of Santa Fe County from liability.

however, and in contravention of Plaintiff's position, the New Mexico legislature also recognized that "while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done." *Id.*; *see also Lymon*, 728 F. Supp. 2d at 1251. The NMTCA reached a balance between these two competing interests by recognizing and generally granting sovereign immunity to governmental actors, but by also providing for exceptions to the doctrine of sovereign immunity for some torts and actors. Accordingly, the NMTCA does not, and the legislature never intended the Act to, provide a remedy for all torts and all actors.

III. <u>Plaintiff's Request for Certification to the New Mexico Supreme Court</u>

Plaintiff requests that if the Court determines that the County Defendants are immune from tort liability pursuant to the NMTCA, that the Court certify the question to the New Mexico Supreme Court. The New Mexico Rules Annotated provide in relevant part that the New Mexico Supreme Court

> may answer by formal written opinion questions of law certified to it by a court of the United States[] . . . if the answer may be determinative of an issue in pending litigation in the certifying court and the question is one for which answer is not provided by a controlling: (a) appellate opinion of the New Mexico Supreme Court or the New Mexico Court of Appeals; or (b) constitutional provision or statute of this state.

N.M. Rules Ann., Rule 12-607(A). The question whether the County Defendants are entitled to sovereign immunity or whether Plaintiff's cause of action against the County Defendants fits within one of the NMTCA's exceptions granted for governmental entities and public employees can be answered both by appellate opinions of the New Mexico Supreme Court and the New Mexico Court of Appeals. The answer also can be found in the plain language of the NMTCA.

Accordingly, the Court declines to certify Plaintiff's question to the New Mexico Supreme Court.

## CONCLUSION

For the foregoing reasons, IT THEREFORE IS ORDERED that the County Defendants' Motion for Summary Judgment (Qualified Immunity) [Doc. 18] is DENIED in part and GRANTED in part as follows:

(1) The motion for summary judgment is denied as moot with respect to Plaintiff's claims under 42 U.S.C. Section 1983.

(2) The motion for summary judgment is granted with respect to Plaintiff's claims under the New Mexico Tort Claims Act.

DATED this 24th day of September, 2012.

MARTHA VÁZQUEZ
United States District Court Judge